205 N.J. Super. 398 (1985)
501 A.2d 166
EMILIO R. VALDES, M.D., RESPONDENT-APPELLANT,
v.
NEW JERSEY STATE BOARD OF MEDICAL EXAMINERS, COMPLAINANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 22, 1985.
Decided November 20, 1985.
*399 Before Judges MICHELS, GAULKIN and DEIGHAN.
Anthony F. LaBue argued the cause for appellant (LaBue, Farber, Newman & Holstein, attorneys; Anthony F. LaBue, of counsel and on the brief).
Joan D. Gelber, Deputy Attorney General, argued the cause for respondent (Irwin I. Kimmelman, Attorney General of New Jersey, attorney for respondent; James J. Ciancia, Assistant Attorney General, of counsel; Joan D. Gelber, on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Emilio E. Valdes, M.D. (Valdes) appeals from a final administrative action of New Jersey State Board of Medical Examiners *400 (Board) denying his application for licensure as a physician in New Jersey. The Board concluded that the credentials submitted by Valdes did not satisfy the statutory requirements of N.J.S.A. 45:9-7 and N.J.S.A. 45:9-8 which are necessary for physician licensure in this State.
Valdes is a foreign national who was born in Cuba in 1957 and came to the United States when he was three years of age. He received a traditional American grammar and high school education which culminated in his graduation from Union Hill High School in Union City, New Jersey in June 1975. He enrolled in Saint Peter's College in Jersey City, New Jersey in September 1975, intending to major in biology.
During the 1975-1976 college year Valdes was registered in 12 three credit courses. However, his transcript reveals that he successfully completed only Introduction to English Composition I, Introduction to Philosophy I, Dynamics of College Reading, Financial Accounting, Principles of Economics I and Introduction to Sociology, earning a total of 18 credits toward a bachelor's degree. In June 1976 he was placed on academic probation. According to Valdes, this probationary status was imposed because he had failed to officially withdraw from elected courses.
Valdes did not continue with his undergraduate studies during the 1976-1977 college year. However, he did re-register at Saint Peter's in September 1977, enrolling in General Biology I, General Chemistry and Differential Calculus. Valdes did not successfully complete any of these courses and he earned no credits therefrom due to his withdrawal from undergraduate studies sometime during the term because of unspecified personal problems.
In 1978 Valdes began medical studies at the Universidad Central del Este (UCE) in the Dominican Republic, completing four and one half years of education from January 1978 through May 1982. This education included both basic premedical and medical courses, which were taken over a period of *401 twelve semesters. The Credentials Committee of the Board decided to question Valdes about this educational background after reviewing his transcript from UCE because his professional schooling was deemed to be "a little unusual." Specific questions were raised because of the unorthodox order in which premedical and medical courses were taken and due to the convalidation credit which had been accorded to Valdes by the university.
During an appearance before the Credentials Committee, Valdes and his counsel attempted to explain the irregularities in his transcript in terms of the UCE medical program. They contended that the first two semesters of the twelve required semesters of study normally included basic courses "which are essentially higher education ... Something on the baccalaureate level." These two full semesters were generally taken by nationals who have gone directly from their foreign high schools to the university.
Additional questions were raised by the Credentials Committee because Valdes' UCE transcript revealed that the university had convalidated credit for several basic premedical first and second semester courses including Sociology, Literature 011, Philosophy, English and Literature 012. By virtue of this convalidation, UCE had implicitly recognized that this coursework had been completed at another educational institution. Although the completion of Introduction to Sociology and Introduction to Philosophy I was reflected on Valdes' Saint Peter's transcript, the convalidation of three additional courses was specifically questioned by the Credentials Committee.
Valdes explained that he had received credit for English Composition and Spanish Literature courses because he was bilingual and had successfully passed a convalidation examination in these subjects. It was, therefore, acknowledged that of the twelve first and second semester basic courses required at UCE, seven were actually taken by Valdes and five were convalidated. Valdes contended that UCE did not operate *402 under a credit system and, therefore, he could provide no concrete information to the Credentials Committee with respect to the number of credits accorded to these first and second semester courses.
Valdes' UCE transcript additionally indicated that medical courses such as Anatomy I, Anthropology, Biostatistics, Embryology, Inorganic Chemistry and Anatomy II had been taken before basic premedical courses such as Mathematics 012, General Chemistry, Physics 012 and Biology were completed. The transcript further revealed that Physics 012, a second semester course, was taken in December 1979 before Physics 011, a first semester course, was completed in April 1980. Likewise, Mathematics 012, a second semester course, was taken in April 1979 despite the fact that Mathematics 011, a first semester course, was not completed until April 1982.
With respect to these irregularities, Valdes acknowledged to the Credentials Committee that he had taken some premedical courses at the same time that he was taking medical school courses. Despite this acknowledgment, he asserted that he was not carrying a heavier course load than other students in his class. He did note, however, that it was not until the fifth semester of his schooling that he "started to have a regular semester." In addition, he explained that the basic Mathematics course was not completed until just before graduation in April 1982, due to an oversight which was discovered when his transcript was being reviewed for graduation purposes. Valdes did not explain, however, why he had taken certain medical courses before or concurrent with obvious prerequisites.
A medical degree was conferred on Valdes by UCE in May 1982. After his return to the United States, Valdes obtained a Bachelor of Arts degree in April 1983 from Thomas Edison State College (a school without walls) in Trenton, New Jersey. Valdes did not attend classes at this school and he was awarded his degree based upon a thesis which was submitted and tested by correspondence. The Thomas Edison degree was also *403 awarded based, in part, upon credits earned at both Saint Peter's and UCE. Valdes pursued this degree in an apparent effort to meet this State's standard for licensure. However, at the appearance before the Credentials Committee, his counsel asserted that Valdes was not relying on the Thomas Edison degree to establish that his education credentials were in compliance with statutory requirements. See N.J.S.A. 45:9-7 (requiring that applicants for licensure evidence satisfactory completion of two years of college study). Valdes explained that "[h]e didn't think [he] really needed [this degree], but [he] just wanted to have it...."
Valdes passed the Educational Commission for Foreign Medical Graduates (ECFMG) examination in July of 1982 and the Federation Licensing Examination (FLEX) in June 1983. He had already been licensed to practice medicine in Georgia at the time of his application to the Board in June 1984. It was by virtue of this Georgia medical license that Valdes sought licensure in New Jersey, through the endorsement mechanism of N.J.S.A. 45:9-13. Valdes had been employed at the University of Medicine and Dentistry of New Jersey since 1983. He successfully completed his transitional year of residency in June 1984 and was in his second postgraduate year of residency at the time of his appearance before the Credentials Committee in October 1984.
Following the submission of his application for endorsement of licensure, dated June 26, 1984, and his appearance before the Credentials Committee, the Board determined that Valdes' credentials did not satisfy the statutory prerequisites for licensure contained within N.J.S.A. 45:9-7 and N.J.S.A. 45:9-8. The Board specifically determined that Valdes had failed to show completion of two years (60 credits) of education, including studies in physics, chemistry and biology, at an approved post-high school level, which was necessary to establish a minimum educational foundation prior to the commencement of four years of thorough and comprehensive medical education. The Board concluded that Valdes' credentials did not satisfy the *404 statutory prerequisites of both N.J.S.A. 45:9-7 and N.J.S.A. 45:9-8 and, therefore, it denied his application for licensure as a physician in this State. This appeal followed.
Valdes now contends that the Board should have accorded him a hearing in compliance with the provisions of the Administrative Procedure Act, N.J.S.A. 52:14B-1 et seq., before making its determination. Even absent this statutory mandate, Valdes asserts that he is entitled to a hearing, as a matter of due process, to establish his qualifications for licensure. In addition, Valdes contends that the Board's refusal to grant him a license, without the completion of two full years of undergraduate premedical school education, evinces a discriminatory policy with respect to the evaluation of credentials. He argues that this discrimination is evidenced by the fact that foreign nationals are routinely granted medical licenses in New Jersey, despite the fact that they have attended professional schools immediately following high school level schooling.
We are satisfied from our study of the record, in light of the arguments presented, that the decision of the Board was not arbitrary or unreasonable. Furthermore, we find that the Board's decision does not constitute a mistaken exercise of discretion and that it is amply supported by the record. See In re Suspension of Heller, 73 N.J. 292, 309 (1977); Campbell v. Department of Civil Service, 39 N.J. 556, 562 (1963). Moreover, we find that all of the issues of law raised are clearly without merit. R. 2:11-3(e)(1)(D), (E).
We emphasize that although the Board is clearly one of the State agencies governed by the provisions of the Administrative Procedural Act (Act), see N.J.S.A. 52:14B-2(a), the Act itself does not create a substantive right to an administrative hearing. Rather, the Act provides for a procedure to be followed "in the event an administrative hearing is otherwise required by statutory law or constitutional mandate." In re Application of Modern Industrial Waste Service, 153 N.J. Super. 232, 237 (App.Div. 1977). See also In re Orange Savings *405 Bank, 172 N.J. Super. 275, 286 (App.Div. 1980) (concluding that term "required" as used in N.J.S.A. 52:14B-2(b) refers to any hearing which is held under requirements of an applicable statute).
There is no specific statutory entitlement to a hearing before the issuance or denial of a medical license within the New Jersey Medical Practice Act, N.J.S.A. 45:9-1 et seq. N.J.S.A. 45:9-16 simply provides for a hearing before the Board in cases involving suspension or revocation of previously issued medical licenses. It does not provide for such a hearing with respect to the issuance or denial of such licensure.
Moreover, there is no constitutional right to a hearing in connection with such application. "[R]equirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." Board of Regents v. Roth, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548, 556 (1972). Accordingly, the right to a prior hearing attaches only when liberty or property interests are implicated. Due process does not require a hearing where an individual has a mere expectation in a property interest. A protected property right comes into existence only after a license has been obtained. Thus, before a medical license is issued there is no property right which must be safeguarded by due process. See In re Polk License Revocation, 90 N.J. 550, 570 (1982).
Furthermore, it is clear that Valdes does not have a legitimate claim of entitlement to New Jersey licensure by endorsement by virtue of his Georgia medical license. N.J.S.A. 45:9-13, under which Valdes made application for licensure by endorsement, specifically provides that the issuance of such license is at the discretion of the Board and is dependent upon adequate proof of the fulfillment of the requirements of other sections of the Medical Practice Act, N.J.S.A. 45:9-1 et seq. See generally Rothseid v. State Board of Medical Examiners, 132 N.J.L. 38 (Sup.Ct. 1944) (applicant licensed to practice medicine *406 in Massachusetts denied licensure by endorsement where his medical school was not found to be in good standing); Wooding v. MacAlister, 3 N.J. Misc. 47, 127 A. 38 (Sup.Ct. 1924) (applicant licensed in Colorado denied licensure by endorsement where medical license was granted by registration, rather than after examination); Ruffu v. Board of Medical Examiners, 10 N.J. Misc. 1209, 163 A. 15 (Sup.Ct. 1932) (applicant licensed in Illinois denied licensure by endorsement where medical training was not at approved institution).
The record plainly shows that Valdes failed to meet the educational criteria of N.J.S.A. 45:9-7, which require an applicant to complete a satisfactory two year college course, including chemistry, physics and biology, prior to the commencement of studies at a professional school. By Valdes' own admission, he did not complete undergraduate courses before he began medical school. In fact, he admitted that he took both premedical and medical courses concurrently. This admission casts serious doubt on the totality of his medical training, in light of Valdes' further assertion that during his twelve semesters and four and one half years of attendance at UCE he did not take a course load which was heavier than that of the other students. See N.J.S.A. 45:9-8 (requiring four full school years of thorough and comprehensive medical studies).
Since Valdes' transcript reveals that the medical school allowed him to take preliminary premedical courses following secondary medical courses, legitimate questions were raised about his premedical and medical education. Accordingly, at the time Valdes submitted his application for a medical license by endorsement, he did not possess the necessary educational qualifications which might have otherwise entitled him to licensure. Since Valdes lacked these qualifications and had not yet been issued a license, he has no cognizable property interest upon which he may base his claim for due process.
Finally, we point out that the responsibility for regulating the practice of medicine in this State has been expressly delegated *407 to the Board. See N.J.S.A. 45:9-1 et seq.; Garden State Community Hospital v. State Board of Medical Examiners, 147 N.J. Super. 592, 595-596 (App.Div. 1977), certif. den., 74 N.J. 283 (1977) (citing Black v. MacMahon, 130 N.J.L. 323, 324-325 (Sup.Ct. 1943), aff'd o.b., 132 N.J.L. 171 (E. & A. 1944)). The Board, therefore, has the responsbility "`to protect the health and welfare of members of the public' by assuring that all licensed practitioners are qualified, competent and honest," see In re Suspension of Heller, supra, 73 N.J. at 303-304 (citing Rite Aid of N.J., Inc. v. Board of Pharmacy, 124 N.J. Super. 62, 67 (App.Div. 1973), certif. den., 63 N.J. 503 (1973)) and to ensure that they have received adequate medical education and training. To this end, the Board unquestionably had the power and duty to deny Valdes licensure for his failure to comply with the statutory requisites of this State.
Affirmed.