THE STATE, MICHAEL F. McLAUGHLIN, PROSECUTOR, PLAINTIFF IN ERROR, v. THE MAYOR, &c., OF NEWARK, DEFENDANTS IN ERROR.

On error to the Supreme Court. For opinion of the Supreme Court, see 28 *Vroom* 298.

For the plaintiff in error, *Samuel Kalisch* and *Frederic W. Stevens.*

For the defendants in error, *Sherrerd Depue* and *Chandler W. Riker.*

PER CURIAM.

The judgment of the Supreme Court is affirmed, for the reasons given by that court.

GARRISON, J. (dissenting). The act entitled "An act providing for the formation and establishment of wards in cities of the first class" (*Pamph. L.* 1894, *p.* 387), seems to me to be unconstitutional upon both of the grounds urged against it.

First, because it is special. The act applies to cities of the first class only, and in such cities its effect is to place a legislative question affecting election precincts in the hands of the executive, through his appointees, to be administered once for all without any of those provisions for readjustment to increase of voting population that obtain in the case of less populous municipalities. *Rev., p.* 337, § 17.

The mere inexpediency of a law is not a judicial question, but when a statute is saved from unconstitutionality only in case it rests upon a substantial classification, it is pertinent for the courts to inquire whether the classification relied upon is real or whether it is illusory. With this in view, I have sought to discover what there may be in mere excess of population that can specially require that a legislative question be

removed from the control of the elective representative branch of the local government and placed in the hands of a non-elective body appointed by the administrative department of such municipality. I am unable to see any reason why cities of the first class are or can be possessed of a sole and special fitness for the imposition of this change.

If we turn from the general frame of the act to its main features, it becomes apparent that the resulting departure from uniformity is directly in the face of the pretended classification. A word will make this clear. Under this statute, election precincts in cities of the greatest population are created once for all by an appointed commission; elsewhere throughout the state they are created by a continuing elective body charged under the General Election law with the duty of perpetual readjustment, so that no voting precinct shall contain more than six hundred voters. These precincts affect elections for all state and county officers. We have, therefore, this condition of affairs, viz., that an important provision of the General Election law of the state having a close connection with numerical excess of population, is operative everywhere, excepting where the greatest numerical excess renders it most peculiarly appropriate. In other words, the group of objects selected as a class not only shows no special suitability for the proposed legislation, but, on the contrary, its essential feature is one that renders such legislation absolutely inappropriate.                                    :

To reason otherwise is to contend that in the slower-growing and more sparsely-settled localities, there is a necessity for a provision by which election precincts shall be altered so often as they contain over a certain number of voters, which reason does not exist in cities of the greatest growth and densest population. The bare statement of the proposition condemns a classification based on it as not only without substance but without show of reason.

The second ground is that the objects of the law are not single, and are not expressed in its title. It is admitted that the most important feature of the statute under consideration

is that which authorizes the appointees of mayors of cities of the first class to fix the precincts by which elections are to be held for state and county officers, as well as for those of the municipality. Of this, there is no indication in the title. No person, legislator or citizen, knowing the general provisions of the election law, would imagine that their uniformity was to be radically disturbed by the provisions of an act whose title spoke only of certain municipalities and their internal affairs.

If instead of, or in addition to, affecting municipal government the object of the statute is to alter in any respect the provision of the general act concerning elections, some trace of it should be found in its title.

We turn instinctively to "An act concerning elections" for guidance as to all matters regulative of this governmental provision. An important feature of that act, upon which certainly the convenience and possibly the opportunity of every voter to vote may depend, is that not more than six hundred voters may vote at one polling-place. If this salutary provision of a general law is to be in any wise or anywhere abrogated, it should be by an act whose title contained the words "election," "vote," "precinct," "polling-place," or some other term to indicate that the act of suffrage was affected. To my mind, "An act concerning the formation and establishment of wards in cities of the first class in this state," affords no indication whatsoever of a purpose to change the General Election law in any particular or in any locality.

These reasons lead me to vote against affirming the judgment rendered in the Supreme Court.

There is in this case, furthermore, the broad governmental question whether the legislative function parceled out by the people in a written constitution to a legislature may be by the legislative department of the state handed over to the executive department or any of its branches.

In the case of Paul v. Gloucester County this question appeared to lie athwart the judicial pathway, but the majority opinion, having looked at it, passed by on the other side,

leaving Mr. Justice Reed, in his vigorous .dissent, to have compassion on it and set it up and take care of it.

In the Supreme Court, the case *In re Ridgefield Park*, 25 *Vroom* 288, decided the point, in fact decided two points— *first*, that the territorial boundaries of a proposed municipality is a legislative question of public policy ; *second*, that such being the case, it may not lawfully be delegated to any branch of the judicial department. It inevitably follows that the boundaries of wards in cities and their subdivision into voting precincts, involving likewise pure questions of legislative policy, are matters that may not lawfully be delegated to the executive department, its branches or appointees.

The judgment of the Supreme Court in the cause in hand rests upon the opposite view.

This court, I insist, should not affirm, *sub silentio*, an important doctrine of this nature. The cause should either have been held for special briefs on this point, as was done by the Supreme Court in the case of *Cumberland Glass Manufacturing Co. v. State*, 33 *Atl. Rep.* 210, or a reargument directed, in order that the question of governmental powers be raised and decided after full discussion, as was done by this court, at the present term, in the case of *Allen v. Township of Bernards*, 28 *Vroom* 303.