IN THE MATTER OF PETITION FOR REVIEW OF OPINION NO. 583 OF THE ADVISORY COMMITTEE ON PROFESSIONAL ETHICS.

Argued January 5, 1987—Decided June 15, 1987.

*Michael R. Clancy,* Deputy Attorney General, argued the cause for appellant, Attorney General of New Jersey (*W. Cary Edwards,* Attorney General, attorney; *James J. Ciancia,* Assistant Attorney General, of counsel).

*Theodore W. Geiser* argued the cause for respondent, Advisory Committee on Professional Ethics (*Connell, Foley & Geiser,* attorneys; *Stephen D. Kinnard,* on the brief).

*Richard T. Astorino* submitted a brief on behalf of *amicus curiae,* Medical Society of New Jersey (*Kern & Augustine,* attorneys; *Steven I. Kern,* of counsel).

PER CURIAM.

■ In response to an inquiry by the Medical Society of New Jersey, the Advisory Committee on Professional Ethics (Committee) issued *Opinion No. 583*, 117 *N.J.L.J.* 395 (1986), to address the propriety of *ex parte* communications between a Deputy Attorney General (DAG) who is prosecuting an administrative matter at the Office of Administrative Law (OAL), and the head of the administrative agency involved in the proceeding. Noting that the agency head will ultimately sit in judgment over the matter if it is not settled, the Committee concluded that all such *ex parte* communications between a DAG and an agency head in this context were improper and in violation of *Rule of Professional Conduct* 3.5. The Committee also found that it was improper for another DAG within the same division who shares an office with the prosecuting attorney to engage in such *ex parte* communication. We share the Committee's concern regarding potential conflicts that may arise where an agency head is both the "client" and the ultimate arbiter in the same proceeding. However, we hold that for limited purposes, *ex parte* communications are permissible between DAGs and agency heads while cases are being heard at the OAL. Accordingly, we modify *Opinion 583*.

I

The conflict at issue here arises out of the variety of roles performed by Deputy Attorneys General in administrative proceedings. A DAG's duties are defined in *N.J.S.A.* 52:17A–4(e), which provides that the Division of Law shall

[a]ct as the sole legal adviser, attorney or counsel * * * for all officers, departments, boards, bodies, commissions and instrumentalities of the State Government * * *.

When an agency is performing both prosecutorial and adjudicative functions in the same proceeding, the Attorney General's office appoints one DAG to serve as prosecutor and also provides counsel to advise the agency head in his adjudicative capacity. The issue before us is whether the impartiality of the

agency head would be impermissibly undermined if the prosecuting DAG were permitted to communicate *ex parte* with the agency head during the prosecutorial phase of the proceeding.

In 1978, the Legislature established the Office of Administrative Law in order to foster impartiality in administrative proceedings. *L.*1978, *c.* 67. *See In re Uniform Admin. Procedure Rules*, 90 *N.J.* 85, 90–91 (1982) ("[T]he legislative goal in creating this new governmental office was to promote uniformity, efficiency, consistency, fairness, competence, and, most importantly, independence in the conduct of administrative hearings before State agencies."); *cf. Mazza v. Cavicchia*, 15 *N.J.* 498, 535–36 (1954) (Jacobs, J., dissenting) ("The most persistent criticism [of administrative process is] the continued legislative policy of concentrating, in a single administrator, wide powers of investigation, prosecution, hearing and determination * * *. [T]here are those who believe that without a corps of independent hearers * * * the basic problem will not be met despite such procedural gloss as may be imposed from time to time."). The OAL is an independent agency within the Department of State. *N.J.S.A.* 52:14F–1. It is comprised of Administrative Law Judges (ALJs) who are appointed by the Governor with the advice and consent of the Senate. *N.J.S.A.* 52:14F–4. Generally, when an adjudicative proceeding before a state agency is contested, *see N.J.S.A.* 52:14B–2(b), it is transferred to an ALJ designated by the Director of the OAL. *N.J.S.A.* 52:14B–10(c); *see also N.J.S.A.* 52:14F–8 (listing exceptions to general rule). The ALJ conducts hearings and issues a report and decision with recommended findings of fact and conclusions of law. *N.J.S.A.* 52:14B–10(c). This report is then reviewed by the head of the agency, who "shall adopt, reject or modify" it within forty-five days. *Id.* The agency head must base the final decision solely on the record established at the hearing. *N.J.S.A.* 52:14B–10(d). If the agency head does not act within forty-five days, the report is deemed to have been adopted. *N.J.S.A.* 52:14B–10(c).

As the attorney for the administrative agency, a DAG represents the agency in proceedings before the ALJ. During the course of those proceedings, the need may arise for the DAG to consult his client. For example, the DAG may be approached regarding the possibility of settlement. The issue then becomes whether a DAG in that situation may consult the agency head to determine the agency's position despite the fact that the agency head will ultimately decide the case if it is not settled. This is the issue raised in *Opinion 583*. As the Advisory Committee explained:

> The inquirer states that:
>
> "In administrative agencies, especially the professional boards, it is the head of the agency (i.e. President of the Board of Medical Examiners) who is consulted with respect to offers to [*sic*] settlement in disciplinary proceedings involving a licensee of the agency. This agency head sits in judgment over matters which are ultimately not settled and is, therefore, a quasi-judicial officer."
>
> The first inquiry seeks to determine the propriety of a Deputy Attorney General (DAG), who is involved in prosecuting the matter before the agency, making *ex parte* contact with the agency head to determine the acceptability of a particular settlement or the agency's position on settlement. The first issue is whether the DAG who is prosecuting a matter before an agency may have *ex parte* communication with the agency head regarding issues in the matter.
>
> Related to the issue of the prosecuting DAG engaging in such *ex parte* communication, is the situation where another DAG, from the same division of the Attorney General's office as the prosecuting attorney, who acts as a prosecutor in other cases which come before the agency and who shares the same office with the prosecuting attorney, engages in similar *ex parte* communication.

In deciding that *ex parte* consultation between agency heads and prosecuting DAGs is impermissible, the Committee relied in part on *RPC* 3.5, stating that:

> In our opinion, both of the above inquiries are answered by RPC 3.5, which provides in part as follows:
>
> A lawyer shall not:
>
> (a) seek to influence a judge, juror, prospective juror, or other official by means prohibited by law;
>
> (b) communicate *ex parte* with such a person except as permitted by law;
>
> We hold that in both instances, *ex parte* communications in the above instances violate the provisions of RPC 3.5(a) and (b) and are improper.

The Advisory Committee also relied on an opinion of the California State Bar Committee on Professional Responsibility:

> The California State Bar Standing Committee on Professional Responsibility and Conduct, Opinion 1984–82 held that:
>
> When an agency has elected to have the case heard before the agency itself, the agency head is performing functions equivalent to a judge or judicial officer, and must be considered a judicial officer within the meaning of 7–108(B) ... Furthermore, 7–108(B) applies to communications with the agency head during the limited period when the adoption, modification, or rejection of the proposed decision of the hearing officer is under consideration. Neither the trial attorney for the agency nor the attorney for the interested party should communicate with an agency head with respect to the case during these periods....
>
> In our view, an agency head or hearing officer is a judicial officer or equivalent to a judge and that *ex parte* communications with that officer are improper. We subscribe to the holding of the above cited California opinion.

## II

We begin by observing that neither *RPC* 3.5 nor the California opinion is dispositive of the issue before the Committee. *RPC* 3.5(b) clearly states that *ex parte* communications with a tribunal are not improper when permitted by law. Communications between DAGs and agency heads regarding the settlement of contested cases are specifically permitted by *N.J.A.C.* 1:1–3.8(c), which provides:

> Where an agency or agency staff is a party to a contested case, the legal representative appearing and acting for the agency in the case may not engage in ex parte communications concerning that case with the judge, except for scheduling or other similar purposes, or the agency head, *except for purposes of settlement discussion,* and may not participate in making or preparing the final decision in the case. [Emphasis added.]

We note that this regulation reflects the current policy of the Department of Law and Public Safety to appoint a DAG other than the prosecuting DAG to advise the agency head once the case has left the OAL and is awaiting a final decision.[1] The regulation also acknowledges that while the case is before an administrative law judge, the agency head is the DAG's client and may be consulted if settlement is proposed.

---

[1] This policy is set forth in internal memoranda of the Department, which have been submitted to the Court and to opposing counsel for comment.

We are also unpersuaded by the Committee's reliance on the opinion of the California State Bar Committee on Professional Responsibility. To the extent that the California opinion prohibits *ex parte* communications between a prosecuting attorney and an agency head, it is confined to cases in which the agency head is the hearing officer or to communications occurring "during the limited period when the adoption, modification or rejection of the proposed decision of the hearing officer is under consideration." As stated earlier, *N.J.A.C.* 1:1–3.8(c) and Department of Law policy already prohibit *ex parte* communications between prosecuting DAGs and agency heads during the forty-five day period when the final decision is being made.

## III

The questions raised in *Opinion 583* are best analyzed in the context of the debate over the fairness of having administrative agencies serve in both prosecutorial and adjudicatory capacities. *See e.g., FTC v. Cement Inst.,* 333 *U.S.* 683, 68 *S.Ct.* 793, 92 *L.Ed.* 1010 (1948); *In re Larsen,* 17 *N.J.Super.* 564 (App. Div.1952). It has often been argued that casting the same individuals within an agency in these dual roles violates due process. *Withrow v. Larkin,* 421 *U.S.* 35, 95 *S.Ct.* 1456, 43 *L.Ed.*2d 712 (1975); *FTC v. Cement Inst., supra,* 333 *U.S.* at 702, 68 *S.Ct.* at 804, 92 *L.Ed.* at 1035; *In re Polk License Revocation,* 90 *N.J.* 550 (1982). However, the general rule is that proof of actual bias is necessary to overturn administrative actions on this basis. *See Withrow v. Larkin, supra,* 421 *U.S.* at 47–48, 95 *S.Ct.* at 1464–65, 43 *L.Ed.*2d at 723–24; *In re Polk, supra,* 90 *N.J.* at 576. Nevertheless, although the combination of functions within an administrative agency does not violate due process, it has been noted that "there is substance in the fear that in such concentration inheres the danger of partiality in judgments having an impact upon private rights and that the danger cannot be ignored." *In re Larsen, supra,* 17 *N.J.Super.* at 575 (Brennan, J.A.D., concurring).

The Federal Administrative Procedure Act (APA), 5 *U.S.C.* §§ 551–59, sought to eliminate this danger of partiality by requiring a separation of the judging and prosecuting functions within an administrative agency. 5 *U.S.C.* § 554. In fact, a fundamental purpose of the APA was "to curtail and change the practice of embodying in one person or agency the duties of prosecutor and judge." *Wong Yang Sung v. McGrath*, 339 *U.S.* 33, 41, 70 *S.Ct.* 445, 450, 94 *L.Ed.* 616, 624 (1950), modified on other grounds, 339 *U.S.* 908, 70 *S.Ct.* 564, 94 *L.Ed.* 1336; *see also* 3 K. Davis, *Administrative Law Treatise*, ch. 18, pp. 340–70 (1980). Therefore, Congress adopted § 554, which, in its current form, provides that "[a]n employee or agent engaged in the performance of investigative or prosecuting functions for an agency in a case may not, in that or a factually related case, participate or advise in the decision, recommended decision, or agency review * * *." This section embodies the view that an agency can perform conflicting functions as long as an internal separation of these functions is maintained. This was the view advanced by various committees appointed to review proposed administrative reform prior to the adoption of the APA. *See Wong Yang Sung, supra,* 339 *U.S.* at 41–45, 70 *S.Ct.* at 450–52, 94 *L.Ed.* at 624–25. As stated in the Final Report of the Attorney General's Committee on Administrative Procedure:

> These types of commingling of functions of investigation or advocacy with the function of deciding are thus plainly undesirable. But they are also avoidable and should be avoided by appropriate internal division of labor. For the disqualifications produced by investigation or advocacy are personal psychological ones which result from engaging in those types of activity; and the problem is simply one of isolating those who engage in the activity. Creation of independent hearing commissioners insulated from all phases of a case other than hearing and deciding will, the Committee believes, go far toward solving this problem at the level of the initial hearing provided the proper safeguards are established to assure the insulation.... [S.Doc. No. 8, 77th Cong., 1st Sess. 56 (1941), *quoted in Wong Yang Sung, supra,* 339 *U.S.* at 44, 70 *S.Ct.* at 451, 94 *L.Ed.* at 625.]

Our Legislature took a more direct approach to the conflicts raised by the dual functions of administrative agencies. *See N.J.S.A.* 52:14B-1 to –15. Rather than requiring an *internal* separation of functions, this state's Administrative Practice and

Procedure Act provides for a more formal separation, by re-moving contested cases to the OAL. *N.J.S.A.* 52:14B–10(c). As noted earlier, the OAL is an independent agency within the Department of State, *N.J.S.A.* 52:14F–1, and the ALJs em-ployed by the OAL are appointed by the Governor with the advice and consent of the Senate, *N.J.S.A.* 52:14F–4. Although the agency head has the power to review the findings and recommendations of the ALJ, the final decision must be based solely on the record established in the proceedings at the OAL. *N.J.S.A.* 52:14B–10(d).

In our view, it is clearly appropriate to distinguish between *ex parte* communications that occur while the case is at the OAL and those that occur while the case is being reviewed by the agency head. During hearings before the ALJ, the agency head is, in effect, the "client" of the prosecuting DAG. Thus, the applicability of *RPC* 3.5 to communications between DAGs and agency heads must take into account the ethical rules defining an attorney's duty to keep clients reasonably informed. *See RPC* 1.2, 1.3 & 1.4. As the "client" of the DAG, the agency head should be kept advised about the status of the case. *RPC* 1.4. *Ex parte* communications may be necessary in order for the DAG to satisfy the obligations imposed by *RPC* 1.4.

The propriety of specific *ex parte* communications between DAGs and agency heads will depend on the circumstances of each case and the nature of the communication. In some administrative proceedings, the decision to settle or continue prosecution can be made on the basis of information that can be disclosed *ex parte* to the agency head without compromising his impartiality. In other cases, the nature of the information to be disclosed may be so sensitive that it would compromise the agency head's ability to adjudicate the case impartially if it is not settled. The conflict in such cases may be resolved by a more limited disclosure or by a delegation of the settlement decision to an agency employee who will not ultimately adjudi-cate the issue. If those options are impractical, then the communications should not be *ex parte*. We emphasize that

the focus must be on maintaining the impartiality of the agency head in all cases. We anticipate that DAGs and agency heads will be cautious and circumspect in deciding whether *ex parte* communications are necessary, and will ensure that such communications do not threaten the fairness of the proceedings.[2]

However, during the period of review of the ALJ's findings and recommendations, the agency head is the adjudicator, and *ex parte* communications with the prosecutor during this stage of the proceeding are clearly improper.[3] A DAG who can provide impartial advice should be assigned to advise the agency head during the forty-five day review period.

The guidelines set forth in this opinion also control the question whether a DAG sharing an office with the prosecuting DAG, or *any* representative of the Attorney General's office, may communicate *ex parte* with the agency head while the case is being heard at the OAL. We emphasize, however, that the DAG designated to advise the agency head during the forty-five

---

[2]As noted, the only *ex parte* communications currently permitted by *N.J.A.C.* 1:1–3.8(c) are settlement discussions between agency heads and DAGs prosecuting cases before the OAL. We anticipate that in most cases the communications that are necessary to keep the agency head reasonably informed will be those involving settlement. However, although the regulation is limited to settlement discussions, we recognize that there will be cases where other types of *ex parte* communications may be necessary. For instance, a DAG may need to obtain the permission of the agency head to dismiss a charge in a particular case. Such communications are also governed by the principles outlined in this opinion, and are permitted if they will not jeopardize the fairness of the proceedings.

[3]*N.J.S.A.* 52:14F–8(b) provides that an administrative law judge shall not be assigned to hear contested cases with respect to "[a]ny matter where the head of the agency, a commissioner or several commissioners, are required to conduct, or determine to conduct the hearing directly and individually." This statute also exempts certain agencies from the requirement that contested cases be transferred to the OAL. *N.J.S.A.* 52:14F–8(a). It is clear that where a case is not transferred to an ALJ, and the agency adjudicates all phases of the proceeding itself, *ex parte* communications with the prosecuting DAG are improper.

day review period must be sufficiently removed from the prosecuting DAG to be able to render impartial advice.

■ In sum, we hold that while an administrative case is being heard at the Office of Administrative Law, the prosecuting DAG may consult *ex parte* with the head of the administrative agency, subject to the limitations set forth in this opinion, and only to the extent necessary to keep the client reasonably informed. However, during the forty-five day period when the agency head is reviewing the findings and recommendations of the ALJ, or if the agency itself adjudicates all phases of the proceeding, *ex parte* consultation with the prosecuting DAG is improper and any legal advice must be furnished by a different and impartial DAG designated for that purpose.

Accordingly, we modify *Opinion 583* of the Advisory Committee on Professional Ethics.

*For modification* —Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.