268 N.J. Super. 291 (1993)
633 A.2d 572
ROBERT J. DEL TUFO, ATTORNEY GENERAL OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
J.N., M.D. AND B.C., M.D., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 14, 1993.
Decided November 17, 1993.
*293 Before Judges KING, HAVEY and ARIEL A. RODRIGUEZ.
Brenda Talbot Lewis, Deputy Attorney General, argued the cause for appellant (Fred DeVesa, Acting Attorney General, attorney; Andrea M. Silkowitz, Assistant Attorney General, of counsel; Ms. Lewis, on the brief).
Steven I. Kern, argued the cause for respondents (Kern, Augustine, Conroy & Schoppmann, P.C., attorneys; Mr. Kern, of counsel and on the brief with Robert J. Conroy).
The opinion of the court was delivered by HAVEY, J.A.D.
*294 The central question raised by this appeal is whether, during an investigation of a physician-licensee conducted by the Attorney General on behalf of the Board of Medical Examiners (Board), the Board's medical director may directly question the licensee. The Law Division judge held that since the Board may investigate a licensee only through the Attorney General, any questioning of the licensee must be undertaken by the Deputy Attorney General (DAG) who is conducting the hearing. We reverse. We hold that the medical director has the implied power to question a licensee during such an investigation under narrowly circumscribed circumstances.
Defendants J.N. and B.C., medical doctors,[1] are employed by Princeton BioCenter P.A., which treats residents at Earth House, a boarding home in Somerset. Earth House offers residential treatment to persons suffering from schizophrenia and other mental illnesses, consisting of exercise, diet, nutrient supplementation and behavior modification. Princeton BioCenter provides medical care termed "orthomolecular," an integral part of the Earth House program, defined as "metabolic and nutritional interaction."
Following a preliminary inquiry during which the director of Earth House was questioned, the Attorney General determined that the medical care rendered by physicians at Princeton BioCenter required further scrutiny. Accordingly, pursuant to the Uniform Enforcement Act (UEA), N.J.S.A. 45:1-18b, the Attorney General initiated a formal investigation. The DAG in charge of the inquiry subpoenaed defendants for the purpose of their appearance at the office of the Attorney General to give testimony under oath. Present during the hearing were two Deputy Attorneys General, the Board's medical director, William I. Weiss, M.D., defendants, their attorney and an attorney for Princeton *295 BioCenter. During the course of the hearing DAG Lewis requested the assistance of Dr. Weiss in questioning Drs. J.N. and B.C. The DAG requested that Dr. Weiss be permitted to ask questions directly of the physicians concerning the tests performed at Princeton BioCenter for allergies, nutrient deficiencies and other problems, as they related to specific patients. She insisted that the medical director, as her consultant, be permitted to question "in [these] areas where I am not an expert." Defendants' attorney objected, noting that Dr. Weiss was not an attorney and thus his active participation in the questioning would constitute the unauthorized practice of law. Counsel also argued that Dr. Weiss was not a voting member of the Board, and had not been authorized by the Board to question the defendants.
Pursuant to N.J.S.A. 45:1-19, the Attorney General initiated a summary proceeding in the Law Division to compel Drs. J.N. and B.C. to answer the questions put to them by Dr. Weiss. The Law Division judge dismissed the Attorney General's complaint in its entirety, reasoning that under the UEA, the Board has no independent power to investigate a licensed physician. N.J.S.A. 45:1-18b provides that when it appears any licensee is engaged in an unlawful practice "the board or the director [of the Division of Consumer Affairs] through the Attorney General, or the Attorney General acting independently" may, as part of an investigation, examine any person under oath in connection with the suspected unlawful practice. The Law Division judge reasoned that since there was no comma in the pertinent language of N.J.S.A. 45:1-18 separating "the board" from "or the director," the Legislature intended that the Board be permitted to investigate only through the Attorney General. Consequently, he concluded, the medical director, as a representative of the Board, had no independent power to interrogate the licensees.
The Attorney General first asks us to address the broad holding pronounced by the Law Division judge that the Board, as well as all other licensing boards, have no independent power to conduct an investigation of a licensee without the participation of the *296 Attorney General. While we may question the correctness of the judge's holding, we need not address the issue, since this is not a case where the Board is conducting an independent investigation of a physician; it is an investigation initiated by the Attorney General on behalf of the Board.
Consequently, the narrow issue is whether, during an investigation conducted by the Attorney General, the DAG may delegate to the medical director the right to ask a licensee specific questions requiring medical expertise. That question is answered by reference not only to the UEA, but also to pertinent provisions of the Medical Practice Act (MPA), N.J.S.A. 45:9-1 to -27, and the legislative purposes of both statutes. The statutes must also be read in pari materia, since they overlap in their purpose, namely, defining the methods of investigating and conducting disciplinary proceedings involving professional licensees. See Miller v. Passaic Valley Water Comm'n., 259 N.J. Super. 1, 12, 611 A.2d 128 (App.Div.), certif. denied, 130 N.J. 601, 617 A.2d 1222 (1992).
The MPA creates the Board of Medical Examiners, N.J.S.A. 45:9-1, whose overall task is to regulate the practice of medicine and allied professions. Brodie v. New Jersey Bd. of Med. Examiners, 177 N.J. Super. 523, 529, 427 A.2d 104 (App.Div.), certif. denied, 87 N.J. 386, 434 A.2d 1068 (1981). To that end, the MPA grants comprehensive supervisory powers to the Board, including subpoena power to compel attendance at Board hearings, and to seek penalties for failure to appear or to give testimony. N.J.S.A. 45:9-2. It also has broad rule-making powers to carry out its legislative objectives, ibid., and may suspend or revoke a license based on one or more grounds enumerated under N.J.S.A. 45:9-16.
The Board may employ a full-time medical director "to assist [it] in carrying out its duties pursuant to Title 45 of the Revised Statutes." N.J.S.A. 45:9-19.6. The medical director must be a New Jersey-licensed physician, whose duties shall include the reviewing of complaints and reports of "medical malpractice, impairment, incompetence or unprofessional conduct," and assisting *297 the Board "in making disciplinary determinations regarding a licensee." Ibid. The medical director shall also "perform such other duties as the board may require in carrying out its responsibilities[.]" Ibid. The Board and the Division of Consumer Affairs in the Department of Law and Public Safety are directed to provide all necessary investigative, administrative and clerical support as is necessary to assist the medical director in carrying out his or her duties. Ibid.
The UEA, N.J.S.A. 45:1-18, to which the Law Division judge referred, does not abrogate the powers of the Board to license, regulate and investigate members of the medical profession. Rather, the UEA, a remedial statute, was intended to provide uniformity in the investigative and enforcement powers of all professional boards "located within the Division of Consumer Affairs." N.J.S.A. 45:1-14. According to the Senate Labor, Industry and Professions Comm., Statement to Senate Bill No. 497 (1978), the UEA's purpose was to provide "uniform standards for disciplinary actions and the investigative and enforcements powers which may be exercised by the Attorney General in implementing professional and occupational licensing statutes." The statement makes clear that "[p]rior law is repealed and superseded only to the extent that it is inconsistent with the terms of this act." (Emphasis added).[2]
Thus, although the UEA vests in the Attorney General investigative and enforcement powers in matters involving professional licensing, N.J.S.A. 45:1-18, and rule-making authority governing the procedures for administrative hearings, see N.J.S.A. 45:1-17a, nothing in the UEA expressly divests the Board or its medical director of their statutory powers to aid the Attorney General by participating directly in the investigation of "medical malpractice, *298 impairment, incompetence or unprofessional conduct." N.J.S.A. 45:9-19.6.
It is true that neither the MPA nor the UEA expressly authorizes the Board's medical director to undertake the questioning of a witness during an investigative hearing. However, our Supreme Court has held that "when the task of the regulatory agency `is to protect the health and welfare of members of the public by assuring that all licensed practitioners are qualified, competent and honest, the grant of implied powers is particularly important.'" In re Polk License Revocation, 90 N.J. 550, 574, 449 A.2d 7 (1982) (quoting In re Suspension of Heller, 73 N.J. 292, 303-04, 374 A.2d 1191 (1977) (citation omitted)). Moreover, in deciding whether a particular power or administrative act enjoys statutory authority, we consider not only the express powers of a licensing board. We may "look beyond the specific terms of the enabling act to the statutory policy sought to be achieved by examining the entire statute in light of its surroundings and objectives." New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 562, 384 A.2d 795 (1978).
If the medical director has the power to review complaints of medical malpractice and unprofessional conduct and to otherwise "assist the board in carrying out its duties," N.J.S.A. 45:9-19.6, clearly the director may assist the Attorney General by participating in the questioning of a licensee during an investigation. Such an investigation may be expedited if the medical director is able to employ medical expertise, at the DAG's request, in framing questions involving matters beyond the ken of the DAG. The questioning may also sharpen the focus on a difficult medical or psychiatric issue. We perceive of no prejudice to a licensee by such a proceeding, provided the questioning is discretely related to medical or psychiatric matters. Defendants suggest that the medical director relay the questions to the DAG. This procedure would presumably elicit the same answer the licensee would give if the medical director asked the question directly. It would also unnecessarily encumber the investigative process.
*299 We add a note of caution. Such questioning by the medical director should be an exception to the general rule that the DAG shall conduct the questioning of licensees when the Attorney General has initiated the investigation pursuant to N.J.S.A. 45:1-18. Moreover, the questioning should be in the presence of and monitored by the DAG, since the Deputy is best able to decide whether a particular question may, for example, encroach upon the patient-client privilege. See N.J.R.E. 506; N.J.S.A. 2A:84A-22.1 to -22.7. We caution further that the medical director's participation in the questioning may be permitted only during the investigative stage initiated under N.J.S.A. 45:1-18.
We also reject defendants' argument that Dr. Weiss' participation in the questioning constituted an unauthorized practice of law. There is no all-inclusive definition of what constitutes the practice of law in our State; our Supreme Court decides the issue on a case-by-case basis. In re Opinion No. 24, 128 N.J. 114, 122, 607 A.2d 962 (1992). The issue is resolved "in a common-sense way which will protect primarily the interest of the public and not hamper or burden that interest with impractical and technical restrictions which have no reasonable justification." New Jersey State Bar Ass'n v. Northern N.J. Mtg. Assocs., 32 N.J. 430, 437, 161 A.2d 257 (1960) (quoting Gardner v. Conway, 234 Minn. 468, 48 N.W.2d 788, 797 (Sup.Ct. 1951)).
The Chancery Division has held that only lawyers are allowed to conduct quasi-judicial proceedings before administrative agencies, such as a planning board. Slimm v. Yates, 236 N.J. Super. 558, 562, 566 A.2d 561 (Ch.Div. 1989).[3] Here, Dr. Weiss was participating in fact-finding, not in a judicial or quasi-judicial proceeding. He was simply attempting to develop pertinent medical facts on behalf of the Attorney General and the Board to determine whether further proceedings were appropriate. *300 Moreover, the questions to be asked by Dr. Weiss are discretely limited to medical issues, and will be monitored by the DAG present during the proceedings. We do not believe that the interests of the public will be hampered or burdened by the director's limited participation in the proceeding. New Jersey State Bar Ass'n, 32 N.J. at 437, 161 A.2d 257.
We also find no constitutional due process infringement. Dr. Weiss is not, as argued by defendants, acting in both an investigative and adjudicative role; he is employed solely for the purpose of assisting the Attorney General and the Board in carrying out their respective duties. N.J.S.A. 45:1-18; N.J.S.A. 45:9-19.6. He has no adjudicative powers. In any event, "combination of investigative and adjudicative functions does not, without more, constitute a due process violation." Withrow v. Larkin, 421 U.S. 35, 58, 95 S.Ct. 1456, 1470, 43 L.Ed.2d 712, 730 (1975). Proof of actual bias is necessary to overturn an administrative action when an agency serves in both prosecutorial and adjudicatory capacities. In re Opinion No. 583, 107 N.J. 230, 236, 526 A.2d 692 (1987); In re Polk, 90 N.J. at 577, 449 A.2d 7. No such bias is demonstrated here.
For these reasons, defendants will be compelled to answer the specific questions asked by the medical director. There appears to be no dispute that the questions concerned certain tests administered by defendants upon particular patients, and that the questions required the medical expertise of the director. In the circumstances, Dr. Weiss shall be permitted to ask the questions and, if not otherwise objectionable, they shall be answered by defendants.
Reversed.
NOTES
[1] The record of the investigation has been sealed. Thus, at their request, defendants are referred to by their initials.
[2] Also, when the professional boards were, in 1957, transferred to the Department of Law and Public Safety, their powers were expressly preserved. See N.J.S.A. 52:17B-30.
[3] Our Supreme Court has made exceptions to that rule. For example, Rule 1:21-1(e) permits lay persons to appear before the Office of Administrative Law in contested cases under limited circumstances.