649 A.2d 411

ROBERT J. DEL TUFO, ATTORNEY GENERAL OF NEW JERSEY AND NEW JERSEY BOARD OF MEDICAL EXAMINERS, PLAINTIFF–RESPONDENT, CROSS–APPELLANT, v. WILFREDO MANON–ROSSI, DEFENDANT–APPELLANT, CROSS–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted September 28, 1994—Decided November 10, 1994.

Before Judges SHEBELL, SKILLMAN and WALLACE.

*Michael A. Chasan,* attorney for appellant-cross-respondent.

*Deborah T. Poritz,* Attorney General, attorney for respondent-cross-appellant (*Andrea Silkowitz,* Assistant Attorney General, of counsel; *Ressie L. Fuller,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

SKILLMAN, J.A.D.

The Attorney General brought this suit pursuant to the Uniform Enforcement Act (UEA) governing professional and occupational boards, *N.J.S.A.* 45:1–14 to 27, seeking to enjoin defendant from

engaging in the practice of medicine without a license and to collect statutory penalties and costs. On the return date of an order to show cause, the trial court permanently enjoined defendant from engaging in the practice of medicine without a license. However, after further argument, the court determined that the Attorney General was not authorized to recover penalties and costs pursuant to the UEA, but instead was limited to recovering the maximum penalty of $200 provided under the Medical Practices Act (MPA), *N.J.S.A.* 45:9–1 to 27.9. Defendant appealed from the order enjoining him from practicing medicine without a license and the Attorney General cross-appealed from the trial court's refusal to impose the penalties and costs provided under the UEA. Defendant has subsequently withdrawn his appeal. Consequently, the only issue before us is whether the Attorney General may collect the penalties and costs provided under the UEA for a violation of the MPA.

▉ The MPA, enacted in 1938, L.1938, c. 277, §§ 5, 6, provides in pertinent part that any person who engages in "the practice of medicine and surgery in this State without first having obtained a license ... shall be liable to a penalty of [$200] for the first offense." *N.J.S.A.* 45:9–22. The MPA does not authorize the Attorney General or the Board of Medical Examiners to collect the costs incurred in connection with an enforcement action. *In re Silberman,* 169 *N.J.Super.* 243, 258, 404 *A.2d* 1164 (App.Div. 1979), *aff'd o.b.,* 84 *N.J.* 303, 418 *A.2d* 266 (1979).

The purpose of the UEA, enacted in 1978, was to establish "uniform investigative and enforcement powers and procedures and uniform standards for license revocation, suspension and other disciplinary proceedings" for "professional and occupational boards located within the Division of Consumer Affairs," *N.J.S.A.* 45:1–14, which include the Board of Medical Examiners. *N.J.S.A.* 52:17B–126; see *Del Tufo v. J.N.,* 268 *N.J.Super.* 291, 296–97, 633 *A.2d* 572 (App.Div.1993). *N.J.S.A.* 45:1–25 provides in pertinent part that "[a]ny person violating any provision of an act or regulation administered by a board shall ... be liable to a civil

penalty of not more than $2,500.00 for the first offense" and that "[i]n any action brought pursuant to this act, a board or the court may order the payment of costs for the use of the State." In addition, *N.J.S.A.* 45:1–26 provides that "[a]ll acts and parts of acts inconsistent with this act are hereby superseded and repealed."

It appears clear on the face of these statutory provisions that one "part of" the MPA "superseded and repealed" by the UEA was *N.J.S.A.* 45:9–22 which, by limiting the penalties for a first violation to $200 and omitting any authorization for the collection of costs, provided less stringent and consequently less effective enforcement powers than *N.J.S.A.* 45:1–25. In fact, in *In re DeMarco*, 83 *N.J.* 25, 35 n. 5, 414 *A.2d* 1339 (1980), the Court noted in dictum that the UEA "may have superseded if not impliedly repealed section 45:9–22," and in *In re Polk*, 90 *N.J.* 550, 577, 449 *A.2d* 7 (1982), the Court assumed without discussion that *N.J.S.A.* 45:1–25 would govern an enforcement action for a violation of the MPA.

Nevertheless, the trial court concluded that the less stringent enforcement provisions of *N.J.S.A.* 45:9–22 had been revived by subsequent legislative action and inaction. The court pointed specifically to chapter 432 of the Laws of 1979, which repealed former sections of the MPA providing imprisonment for certain violations, thus conforming the MPA with the UEA in this respect, without at the same time repealing the penalty provisions of *N.J.S.A.* 45:9–22. The court also relied upon chapter 153 of the Laws of 1989, which amended *N.J.S.A.* 45:9–22 to delete all references to the practice of chiropractic but failed to change the $200 penalty for first offenders, and legislation which expressly repealed the penalty provisions in the enabling legislation governing other professional and occupational boards. The trial court recognized that the Legislature's failure to expressly repeal the $200 penalty provided by *N.J.S.A.* 45:9–22 was "an anomaly which is a function of legislative oversight," but it nevertheless concluded that this penalty provision prevailed over the provisions of

*N.J.S.A.* 45:1–25 authorizing the imposition of significantly higher penalties and costs.

We are satisfied that nothing the Legislature has done since enacting the UEA in 1978 has negated the clear intent of that legislation to establish uniform procedures and standards, including uniform penalties, for all professional board enforcement actions, and to "supersede and repeal" any inconsistent provisions in the enabling legislation of individual professional or occupational boards. It is our responsibility in construing any statute to effectuate the legislative intent, *Merin v. Maglaki,* 126 *N.J.* 430, 435, 599 *A.*2d 1256 (1992), and the "construction of any statute necessarily begins with consideration of its plain language." *Id.* at 434, 599 *A.*2d 1256. The clearly expressed intent of the UEA was to establish uniform procedures and standards, including uniform penalties, for all professional board enforcement actions. *N.J.S.A.* 45:1–14. The Legislature implemented this intent by providing in clear and unequivocal language that in any action to enjoin the unlicensed practice of a regulated profession "the court may assess a civil penalty in accordance with the provisions of this act," *N.J.S.A.* 45:1–23, which include "a civil penalty of not more than $2,500.00 for the first offense" and "the payment of costs for the use of the State." *N.J.S.A.* 45:1–25. Moreover, to avoid any possible doubt that these provisions were intended to override inconsistent provisions in the enabling legislation governing the individual professional and occupational boards, *N.J.S.A.* 45:1–26 provides that "[a]ll acts and parts of acts inconsistent with this act are hereby superseded and repealed." None of these sections of the UEA have been amended in any material respect since their enactment in 1978. Consequently, absent a clear expression of a contrary intent in other legislation, the penalty provisions of the UEA must govern any enforcement action brought by the Attorney General on behalf of any professional or occupational board.

None of the legislative enactments relied upon by the trial court contain such a clear expression of legislative intent. The first section of chapter 432 of the Laws of 1979 provided for

the outright repeal of various sections in the enabling legislation of certain professional and occupational boards which were inconsistent with or superseded by the UEA, including *N.J.S.A.* 45:9–23 and *N.J.S.A.* 45:9–26, which formerly authorized imprisonment for certain violations of the MPA. Thus, this legislation was enacted strictly as a housekeeping measure to remove from the statute books legislative provisions which already had been repealed by enactment of the UEA. However, *N.J.S.A.* 45:9–22 could not have been repealed outright, because it not only contains penalty provisions that were superseded by UEA but also describes practices that are illegal under the MPA, which is a subject beyond the scope of the UEA. Although the Legislature could have expanded chapter 432 to include amendments of sections of the enabling legislation of individual professional and occupational boards which had been partly repealed or superseded by the UEA, this would have involved a much more extensive legislative drafting project than the simple repeal of sections which are no longer operative at all. The reluctance of the Legislature and/or the Attorney General to undertake this substantial task cannot reasonably be construed as an affirmative expression of a legislative intent to revive the penalty provisions of *N.J.S.A.* 45:9–22.

Similarly, the purpose of chapter 153 of the Laws of 1989 was not to change the uniform enforcement procedures and standards of the UEA but instead to establish a State Board of Chiropractic examiners and to transfer regulatory responsibility over chiropractors from the Board of Medical Examiners to this newly established Board. L.1989, c. 153, § 2 (*N.J.S.A.* 45:9–41.18); Committee Statement to Senate Bill No. 216 (1989). *N.J.S.A.* 45:1–22 and other sections of the MPA were amended as part of this legislative enactment solely to delete all references to chiropractic and chiropractors, thereby conforming the MPA with this new legislation. Therefore, the Legislature's re-enactment of *N.J.S.A.* 45:9–22 for this limited purpose cannot reasonably be construed as an affirmative expression of a legislative intent to reinstate the $200 penalty set forth therein in place of the more

stringent penalty and cost provisions provided by *N.J.S.A.* 45:1–25. This conclusion is consistent with prior decisions of our courts which have refused to give substantive effect to the re-enactment of repealed statutory provisions in legislation which has been enacted as part of a general legislative revision or to accomplish some other unrelated purpose. *See Brewer v. Porch,* 53 *N.J.* 167, 174, 249 *A.*2d 388 (1969) ("Where there are two contradictory provisions in a statute, the primary object is to ascertain the legislative design with reasonable certainty, and where the two, separated in point of time of enactment so that the earlier section was by implication repealed by the latter, are embodied in a revision of general laws, the re-enactment of the former is deemed an oversight and ineffective."); *Hackensack Water Co. v. Division of Tax Appeals,* 2 *N.J.* 157, 166, 65 *A.*2d 828 (1949) (same); *State v. Mayor of City of Newark,* 57 *N.J.L.* 298, 301, 30 *A.* 543 (Sup.Ct.1894) ("By observing the constitutional form of amending a section of a statute the legislature does not express an intention then to enact the whole section as amended, but only an intention then to enact the change which is indicated."), *aff'd,* 58 *N.J.L.* 202, 34 *A.* 13 (E. & A. 1895); *see also State v. Sam,* 85 *Wash.*2d 713, 538 *P.*2d 1209, 1211 (1975); 1A Sutherland § 22.03 at 177–78 (5th ed. 1991).

Moreover, the amendment of the enabling legislation governing certain professional boards to eliminate penalty provisions which conflict with the UEA (*see, e.g., L.* 1989, *c.* 275, § 3 which deleted the penalty provisions in *N.J.S.A.* 45:3–10), does not reflect an affirmative legislative intent to reinstate the penalty provisions in the enabling legislation of other boards, such as *N.J.S.A.* 45:9–22. Each profession is governed by a separate board, and the mere fact that one board may see fit to propose an amendment to its enabling legislation to conform with the UEA does not negate the applicability of the UEA to other boards.

Finally, plaintiff has failed to identify any possible legislative purpose which could be served by excluding the MPA from the uniform enforcement provisions of the UEA. Whenever possi-

ble, a statute should be construed to avoid "an absurd or anomalous result." *Robson v. Rodriguez*, 26 *N.J.* 517, 528, 141 *A.2d* 1 (1958). It would be anomalous and unreasonable for persons who violate the MPA to be subject to a penalty of only $200 when persons who violate the regulatory provisions governing other professions and occupations are subject to a penalty of up to $2,500 plus costs. Therefore, absent clear and unequivocal statutory language requiring this result, we decline to ascribe such an intent to the Legislature.

Accordingly, we reverse the part of the final judgment which denied the Attorney General's application for penalties and costs under the UEA and remand to the trial court for further proceedings in conformity with this opinion.