691 A.2d 862

IN MATTER OF SUSPENSION OR REVOCATION OF
THE LICENSE OF MORTON MARKOFF, D.O.

Superior Court of New Jersey
Appellate Division

Submitted March 25, 1997—Decided April 14, 1997.

608

Before Judges DREIER and NEWMAN.

*Katz, Ettin, Levine, Kurzweil & Weber,* attorneys for appellant Morton Markoff, D.O. (*Kimberle L. Bruckno* and *William C. Levine,* of counsel and on the brief).

*Peter Verniero,* Attorney General, attorney for respondent New Jersey Board of Medical Examiners (*Andrea M. Silkowitz,* Assistant Attorney General, of counsel; *Jeri L. Warhaftig,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

NEWMAN, J.A.D.

Petitioner, Dr. Morton Markoff, entered into a consent order with the Board of Medical Examiners (Board) on March 19, 1993 and agreed

> (1) That Respondent Morton Markoff, M.D. shall immediately surrender his license to practice medicine and surgery in New Jersey with prejudice to seeking any future reinstatement thereof.

On March 13, 1996, approximately three years to the date that he surrendered his license "with prejudice to seeking any future reinstatement thereof," Dr. Markoff filed a petition for leave for reinstatement of his license to practice medicine. The Board considered petitioner's application and denied it in an order entered on May 29, 1996. The order is comprehensive, and we incorporate it in its entirety.

> This matter was opened to the State Board of Medical Examiners upon the filing by Dr. Markoff of an application for leave to petition for reinstatement of his license to practice medicine and surgery in the State of New Jersey. He surrendered the license with prejudice via a Consent Order on March 19, 1993. The Consent Order recited that the Attorney General had by formal administrative complaint sought the suspension or revocation of Dr. Markoff's license based upon his conviction of 24 separate acts of mail fraud, one act of racketeering and one act of racketeering conspiracy. The Order further recited that Dr. Markoff participated in an extensive pattern of insurance fraud with attorneys who were his co-conspirators, beginning in the 1970's and continuing until approximately 1985. The Order related efforts made by Dr. Markoff to increase the amount of damages

patients (referred to Dr. Markoff by the attorneys) could claim in personal injury actions. Feigned injuries and treatment were noted in the patient's charts; patient visits which did not occur were added to the records including patients never seen by Dr. Markoff, the patient's initial appointment was backdated, and in some instances the injury and/or accident was falsified. Dr. Markoff filed an answer admitting his conviction. Following recitation of his criminal sentence (a term of incarceration of 8 years plus restitution in the amount of more than $340,000) the Order provided by consent that Dr. Markoff "shall immediately surrender his license to practice medicine and surgery in the State of New Jersey with prejudice to seeking any future reinstatement thereof."

By petition filed on March 13, 1996, Dr. Markoff sought permission from the Board to apply for reinstatement of his medical license. His request, accompanied by a petition reciting reasons supporting his reinstatement, asserted that the State sought the revocation of Dr. Markoff's license as a result of his criminal conviction, and that the only alternative presented was a surrender with prejudice. The application indicates that "a surrender without prejudice was not an option." The request goes on to state that if Dr. Markoff had not settled the matter, a protracted proceeding would have resulted which was not considered in his best interest or that of the State at the time. In a later submission, Dr. Markoff argued that it was unclear from the Consent Order whether the parties intended that Dr. Markoff would never be given an opportunity to petition for relicensing. He also asserted that had he not cooperated with the State, and proceeded to hearing, he would have had the right to appeal if a revocation was imposed. Additionally he averred that if his license had been revoked, he could now apply for reinstatement. Dr. Markoff also requested an opportunity for a brief oral presentation.[1]

The Board considered this matter on the papers at its meetings of April 10th, and May 8th, 1996. The Board has determined to deny Dr. Markoff's application for leave to petition for reinstatement as it is clear that a surrender "with prejudice to seeking any future reinstatement" on its face means that respondent will not be permitted to apply for a license in the future. It is difficult to imagine language which would have made it clearer to Dr. Markoff that he would not be able to re-enter practice. It is not credible that Dr. Markoff, a sophisticated physician represented by competent legal counsel would not have understood the phrase utilized meant that he could never apply for a license again. Indeed in his counsel's letter of March 13, 1996, it is acknowledged that Dr. Markoff was not given the opportunity of surrendering his license "without prejudice." Yet he attempts at this time to convert his voluntarily agreed to surrender to just that—a surrender without prejudice.

In brief, the Board agrees with the position of the Attorney General in this matter as set forth in DAG Warhaftig's letter of March 28, 1996. More specifically,

---

[1] The Board ordinarily considers applications for leave to petition for reinstatement on the papers, and finds no reason to depart from that practice in this matter, which we note was accompanied by extensive opportunity to submit written briefs and documentation.

the Board agrees that Dr. Markoff, having availed himself of the opportunity to hold himself out as one who had "surrendered" his professional license (as opposed to one whose license had been revoked), while avoiding the expense and embarrassment of a hearing, and potential prosecution on additional charges, should not be heard now to claim that there was no benefit to him of having surrendered his license with prejudice rather than contesting the allegations at a hearing. Additionally, contrary to the claim of Dr. Markoff's counsel, a matter involving a criminal conviction does not involve protracted proceedings or difficult legal proofs, rather, a criminal conviction case is ordinarily proven by the submission to the Board of a certified copy of a Judgment of Conviction, and may be proven on the papers with limited legal argument.

As further pointed out by DAG Warhaftig, the phrase "with prejudice" ordinarily indicates finality of an action. One of the benefits to the State of accepting such a surrender rather than proceeding to hearing and seeking a revocation of license, is the permanent conclusion of a matter without the necessity of considering any further applications. Indeed, this is not a case of first impression as claimed by respondent, rather, the Board has consistently utilized the phrase to preclude any resumption of licensure privileges. The case law supports the notion that the indicated language "should operate as a bar ..." *Mayflower Industries vs. Thor Corp.*, 15 *N.J.Super.* 139, 161, 83 *A.*2d 246 (Ch.Div.1951).

Although we have determined to deny Dr. Markoff's application for leave to petition, we have reviewed the entirety of the written petition he submitted, in which he recounts his experience regarding the criminal conviction, his incarceration, and subsequent rehabilitation and re-entry into the community. Despite the fact that Dr. Markoff has submitted evidence of contrition, community service, and cooperation, we find nothing to demonstrate a "showing of exceptional circumstances" to persuade us that the voluntarily entered order of surrender with prejudice should be re-opened.

On appeal, petitioner argues that the surrender of his license "with prejudice" does not bar him permanently from obtaining relicensure. Further, petitioner contends that the Board's decision denying his application is contrary to legislative policy which gives all applicants the right to seek relicensure.

We agree with petitioner's argument that the surrender of his license with prejudice to "seeking any future reinstatement thereof" would apparently give him fewer rights than he would have had if he had proceeded to hearing and had his medical license revoked, citing *N.J.S.A.* 45:9–16. That section reads in pertinent part:

Any person whose license, or registration of a certificate or diploma to practice medicine and surgery filed in the office of any county clerk of this State under any act of the Legislature, shall be suspended or revoked under the authority of

chapter 9 of Title 45 of the Revised Statutes may, in the discretion of the board be relicensed at any time to practice without an examination, or have his registration of a certificate or diploma, as aforesaid, reinstated, on application being made to the board.

[*N.J.S.A.* 45:9–16g.]

By entering into the consent order, Dr. Markoff purported to give up rights that he might have been entitled to under *N.J.S.A.* 45:9–16.

The Board's authority to enter the order was limited by the jurisdiction given to it by the statute. Thus, even if the license revocation was not resolved by a formal proceeding under *N.J.S.A.* 45:9–16, the consent settlement which encompassed a voluntary surrender of the license was still under the Board's statutory authority under Chapter 9 of Title 45. This power is subject to the licensee's statutory right to apply for restoration. The Board's interpretation of the consent order barring petitioner from seeking reinstatement of his license is consistent with the plain language that was used in that order, but is inconsistent with the statute.

We understand that nothing was presented to show that Dr. Markoff's agreeing to the consent order was other than knowingly, voluntarily and intelligently done, with representation by competent legal counsel. Moreover, it is clear that the Board has followed the procedure utilized here on other occasions to preclude other physicians from any resumption of licensure privileges when licenses have been surrendered with prejudice to future reinstatement. In conformity with the statute, we interpret such an agreement as limited to an indication of the parties' understanding of the disqualifying nature of the licensee's violation, and the probable consequences of any future application to reinstate the license. The Board cannot give up its statutory right to restore the license in a truly extraordinary case.

We are mindful that the Board has been entrusted by the Legislature with the licensing, regulation and disciplining of physicians. *N.J.S.A.* 45:9–1 *et seq.* We are reluctant to interfere with the exercise of the Board's broad regulatory authority in the

absence of arbitrary, capricious or unreasonable action. We do not disagree with the result in this case, only with the Board's assumption that the "with prejudice" agreement supersedes the statutory authority of the Board.

■ The Board properly revisited the order on petitioner's allegation that "exceptional circumstances" warranted relief, but the Board found none. Our review of the record satisfies us that the administrative sanction, in the light of all the circumstances, was not disproportionate to the offenses committed as to shock one's sense of fairness. *In re Polk*, 90 *N.J.* 550, 578, 449 *A.*2d 7 (1982). On the contrary, we would have been shocked had the Board granted petitioner any relief.

The order of the Board is affirmed.