958 A.2d 485 (2008)
403 N.J. Super. 378
In the Matter of Thomas J. KIM, M.D. to Practice Medicine and Surgery in The State of New Jersey.
Docket No. A-1488-07T1
Superior Court of New Jersey, Appellate Division.
Argued September 17, 2008.
Decided October 28, 2008.
*486 Susan Fruchtman, Teaneck, argued the cause for appellant (DeCotiis, FitzPatrick, Cole & Wisler, LLP, attorneys; Anthony F. LaBue, of counsel; Ms. Fruchtman and Joseph G. Buro, on the brief).
Debra W. Levine, Deputy Attorney General, argued the cause for respondent State Board of Medical Examiners (Anne Milgram, Attorney General, attorney; Andrea M. Silkowitz, Assistant Attorney General, of counsel; Ms. Levine, on the brief).
Before Judges PARRILLO, LIHOTZ and MESSANO.
The opinion of the court was delivered by
*487 LIHOTZ, J.A.D.
Petitioner Thomas J. Kim, M.D. (appellant) challenges the authority of the New Jersey State Board of Medical Examiners (Board) to issue a reprimand contemporaneously with the grant of a state medical license. The reprimand resulted from a prior interaction between appellant and a patient, which took place in California and had not been determined to be misconduct by our sister state. We conclude the Board's actions are within its statutory authority, and we affirm.
Appellant is a board certified obstetrician and gynecologist, nationally-recognized for his work in reproductive endocrinology and infertility. Appellant, who was a licensed physician in California, moved to New Jersey on May 3, 2007, and submitted a license application to the Board. In his application, appellant disclosed he had settled a malpractice action filed by a former client, J.B. Appellant was requested to appear before the Board's Credentials Committee (Committee) to discuss this issue and his prior employment.
Appellant responded to the Board's inquiry. He revealed J.B., who was a radiologist in Atlanta, Georgia, had contacted him as a colleague to discuss cryopreservation and other fertility procedures. Appellant and J.B. developed a friendship. At J.B.'s request, appellant began administering fertility treatments to her. The two became intimate and J.B. became pregnant. Thereafter, appellant ended the affair.
J.B. filed a complaint with the California Medical Board. Also, J.B. initiated a civil action alleging professional negligence, infliction of emotional distress, and assault and battery.[1] The matter was settled with no admission of wrongdoing at approximately the same time appellant moved to New Jersey.[2]
Correspondence from the Medical Board of California regarding the status of its investigation advised appellant that an "accusation" would not be filed, therefore, the case was "closed." The Committee confirmed the California Board's decision "was not based upon any negotiated agreement by appellant to avoid action by that state." The Committee recommended "Dr. Kim be granted a [medical] license with the condition that he enter into a public order of reprimand for engaging in conduct[,] which constitutes a violation of the sexual misconduct regulations."
The Board approved the Committee's recommendation and informed appellant licensure would be granted conditioned on the execution of a consent order that included a public reprimand. Through counsel, appellant contested the Board's determination and requested the Board issue no reprimand or, in lieu thereof, issue a private letter agreement of admonishment. The Board denied this counteroffer and "reaffirmed it[]s prior position that a consent order of reprimand be offered to Dr. Kim." Alternatively, the Board permitted appellant to withdraw his application without disciplinary consequences.
Appellant accepted and executed the proposed consent order of licensure. The order briefly recited the factual background of the professional conduct violation with J.B., then stated:
Upon review of Dr. Kim's application for licensure including his testimony before a Committee of the Board, the Board found it adequately protective of the public safety to grant Dr. Kim a *488 plenary license with a reprimand for professional misconduct based on the prior intimate consensual relationship with a patient. In reaching this decision[,] the Board considered that this was an isolated incident[,] and boundaries and the appellant's judgment were in part blurred because the patient was a physician.
....
ORDERED:
1. Thomas J. Kim is hereby reprimanded for violation of N.J.S.A. 45:1-21(e).
2. Thomas J. Kim is hereby granted an unrestricted license to practice in the State of New Jersey.
In making its decision in this matter, the Board considered not only the written statement attached to appellant's application, his testimony offered on August 13, 2007, and the findings of the Committee, but also the oral presentation appellant offered at the Board's October 10, 2007 meeting. The Board's proposed resolution likely reflects its view that denial of the application was too harsh a result yet, the appellant's conduct could not be ignored.
Appellant maintains wide-range repercussions result from the order because the "reprimand is deemed a disciplinary action, [requiring] the Board [] report the reprimand to the National Practitioner Data Bank" and requiring him to disclose the reprimand to health and malpractice insurers; hospitals and surgery centers; and Medicaid and Medicare. On appeal, appellant maintains the Board's action was an "ultra vires ultimatum" that "usurped its statutory authority." He argues the Board is only authorized to grant or deny a license request and has no power to "discipline" a physician prior to licensure.
Our review of an agency action is limited. In re Herrmann, 192 N.J. 19, 28, 926 A.2d 350 (2007); In re Zahl, 186 N.J. 341, 352, 895 A.2d 437 (2006); In re Polk, 90 N.J. 550, 578, 449 A.2d 7 (1982). We restrict our role to three inquiries:
(1) whether the agency's action violates express or implied legislative policies;
(2) whether the record contains substantial evidence to support the findings on which the agency based its action; and
(3) whether, in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made upon a showing of the relevant factors.
[R & R Mktg., L.L.C. v. Brown-Forman Corp., 158 N.J. 170, 175, 729 A.2d 1 (1999).]
Deference is appropriately shown to agency action because of the "`expertise and superior knowledge' of agencies in their specialized fields ... and because agencies are executive actors." Zahl, supra, 186 N.J. at 353, 895 A.2d 437; Greenwood v. State Police Training Ctr., 127 N.J. 500, 513, 606 A.2d 336 (1992). However, "that discretion is not unbounded and must be exercised in a manner that will facilitate judicial review." R & R Mktg., supra, 158 N.J. at 178, 729 A.2d 1 (quoting In re Vey, 124 N.J. 534, 543-44, 591 A.2d 1333 (1991)). We will reverse an agency determination when "satisfied that the agency has mistakenly exercised its discretion or misperceived its own statutory authority." Polk, supra, 90 N.J. at 578, 449 A.2d 7; Division of Alcoholic Beverage Control v. Maynards, Inc., 192 N.J. 158, 183, 927 A.2d 525 (2007).
"The right to practice medicine itself is granted in the interest of the public and is `always subject to reasonable regulation in the public interest.'" Hirsch v. N.J. Bd. of Med. Exam'rs, 252 N.J.Super. 596, 604, 600 A.2d 493 (App.Div.1991) (quoting Polk, supra, 90 N.J. at 570, 449 *489 A.2d 7), aff'd, 128 N.J. 160, 607 A.2d 986 (1992). "The Board, therefore, has the responsibility to `protect the health and welfare of members of the public' by assuring that all licensed practitioners are qualified, competent and honest ... and to ensure that they have received adequate medical education and training." Valdes v. N.J. Bd. of Med. Exam'rs, 205 N.J.Super. 398, 407, 501 A.2d 166 (App.Div.1985).
The Board's actions are guided by the Uniform Enforcement Act (UEA), N.J.S.A. 45:1-14 to -52, and the Medical Practice Act (MPA), N.J.S.A. 45:9-1 to -19. These two statutes are read in pari materia. Del Tufo v. J.N., 268 N.J.Super. 291, 296, 633 A.2d 572 (App.Div.1993).
In adopting the UEA, the Legislature implemented "uniform standards for license revocation, suspension and other disciplinary proceedings" by professional licensing boards, which are granted "uniform investigative and enforcement powers" to insure public safety. N.J.S.A. 45:1-14. Additionally, the MPA vests the Board with the duty to regulate the practice of medicine, N.J.S.A. 45:9-1; N.J.S.A. 45:9-2; Valdes, supra, 205 N.J.Super. at 405, 501 A.2d 166, and "the power to promulgate rules and regulations to protect patients and licensees." Zahl, supra, 186 N.J. at 352, 895 A.2d 437.
When reviewing a request for a license to practice medicine, the Board considers a range of factors. Specifically, the MPA requires an applicant must show "good moral character," N.J.S.A. 45:9-6, and, under the UEA, the Board may refuse to grant a license upon proof that the applicant "engaged in professional or occupational misconduct...[.]" N.J.S.A. 45:1-21(e). Regulations identify "conduct which [the Board] shall deem to be violative of law," which includes engaging in "sexual contact with a patient." N.J.A.C. 13:35-6.3(c).
Enumerated in N.J.S.A. 45:1-22, the UEA sets forth additional provisions available when regulating a licensee. These include in pertinent part:
[i]n addition or as an alternative, ... to revoking, suspending or refusing to renew any license, ... a board may, after affording an opportunity to be heard:
a. Issue a letter of warning, reprimand, or censure with regard to any act, conduct or practice which in the judgment of the board upon consideration of all relevant facts and circumstances does not warrant the initiation of formal action[.]
[N.J.S.A. 45:1-22.]
On appeal, appellant urges a rigid reading of the statutory provisions governing the Board's authority, suggesting the Board cannot condition initial licensure. Appellant requests this court modify the order of licensure "to bring the agency's action into conformity with its delegated authority." Polk, supra, 90 N.J. at 578, 449 A.2d 7; Herrmann, supra, 192 N.J. at 28, 926 A.2d 350. We decline to do so and are satisfied the Board's action was informed by its implicit statutory authority.
Appellant's argument that the authority granted by N.J.S.A. 45:1-22 may only be used after a doctor has been licensed is unavailing. We derive the intention of the Legislature by reviewing the statute as a whole. Maglies v. Estate of Guy, 193 N.J. 108, 123, 936 A.2d 414 (2007); Schierstead v. Brigantine, 29 N.J. 220, 231, 148 A.2d 591 (1959). "[T]he intention is to be collected from the context and the ... necessity of the law and from ... the remedy in view[.]" Schierstead, supra, 29 N.J. at 231, 148 A.2d 591.
The remedial nature of the UEA suggests its liberal interpretation. N.J.S.A. 45:1-14. The Legislature intended *490 to grant the Board a variety of tools to properly and fairly regulate the practice of medicine. The Board's authority includes "`those incidental powers which are reasonably necessary or appropriate to effectuate' the powers expressly granted." In re of A-1 Jersey Moving and Storage, Inc., 309 N.J.Super. 33, 40, 706 A.2d 752 (App.Div.1998) (quoting N.J. Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 562, 384 A.2d 795 (1978)). Thus, the Board is vested not only with the greater power to deny, revoke, or suspend a physician's medical license, N.J.S.A. 45:1-21, but also with the power to invoke the lesser sanctions of warnings, reprimands, or censure. N.J.S.A. 45:1-22(a). We conclude that to limit the exercise of the power to grant or deny licensure, separate from the imposition of a lesser and perhaps more appropriate action is irrational and may thwart the effectiveness of the Board's fundamental dual purpose-to permit qualified physicians licensure while protecting the State citizenry.
Further, the Board's broad regulatory authority requires it to act "as the guardian of the health and well-being of [State] citizens." Polk, supra, 90 N.J. at 566, 449 A.2d 7. The fulfillment of this obligation is "paramount to the rights of the individual practitioner claiming the privilege to pursue his or her medical profession." Ibid. In keeping with its public safety protection function, the Board issued a reprimand to advise the public of appellant's prior ethical lapse.
Finally, we do not find the Board's exercise of discretion by imposing a condition to the grant of licensure rather than the more severe denial of licensure, to be arbitrary, capricious or unreasonable. See Maynards, supra, 192 N.J. at 186, 927 A.2d 525. The Board appropriately balanced the public interest against the need for the continued services of an otherwise qualified medical doctor. After it considered all facts surrounding the interaction with J.B., the Board chose conditional licensure as a more proportional remedy than outright denial of appellant's license request.
We conclude the Board's actions were within the bounds of its statutory authority and reasonable discretion. The Board holds the inherent right to condition licensure by imposing any of the actions allowed by N.J.S.A. 45:1-22 and is not limited to denial of licensure as provided by N.J.S.A. 45:1-21. We decline "to interfere with the exercise of the Board's broad regulatory authority in the absence of arbitrary, capricious or unreasonable action." In re Markoff, 299 N.J.Super. 607, 612-13, 691 A.2d 862 (App.Div.1997).
After considering appellant's remaining contentions in light of the record, the briefs, and the applicable law, we conclude they are without sufficient merit to warrant extended discussion in a written opinion. R. 2:11-3(e)(1)(E). Briefly, we note the following.
Any suggestion that appellant's conduct with respect to J.B. falls outside the scope of N.J.A.C. 13:35-6.3(c) is rejected. J.B.'s occupation as a physician, her prior collegial relationship, and appellant's decision not to charge for his services do not negate her patient status. Additionally, the defense of consent or the suggestion that appellant was "in love" with J.B. is unavailing. N.J.A.C. 13:35-6.3(l).
Appellant's suggestion of coercion also is unsupported. Rather, the record supports the form of order was negotiated and his acceptance of its content was a voluntary, knowledgeable decision, guided by his sophistication and the advice of experienced legal counsel.
*491 Finally, we disagree that a physician's sexual relationship with a patient is not reviewable as misconduct pursuant to California law. See CA Bus. & Prof.Code, §§ 726 and 729. Nevertheless, the California Medical Board's inaction neither impedes nor binds the Board's independent review.
Affirmed.
NOTES
[1] Appellant denied these allegations.
[2] Appellant personally satisfied the settlement award because his carrier had denied coverage, asserting J.B. was not a patient.