**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2141-15T1

IN THE MATTER OF THE
LICENSE OF

KEVIN McCAFFERTY, A.P.N., R.N.,
R.N. #26NR04704300
A.P.N. #26NJ00276800

TO PRACTICE NURSING IN THE
STATE OF NEW JERSEY.

_____

Argued March 21, 2017 — Decided November 16, 2017

Before Judges Messano and Suter.

On appeal from the State Board of Nursing,
Department of Law & Public Safety, Division
of Consumer Affairs.

Mary Ann C. O'Brien argued the cause for
appellant Kevin McCafferty (Crammer, Bishop,
& O'Brien, attorneys; Ms. O'Brien, on the
briefs).

Barbara J.K. Lopez, Deputy Attorney General,
argued the cause for respondent New Jersey
State Board of Nursing (Christopher S.
Porrino, Attorney General, attorney; Andrea M.
Silkowitz, Assistant Attorney General, of
counsel; Ms. Lopez, on the brief).

The opinion of the court was delivered by

SUTER, J.A.D.

Kevin McCafferty appeals the December 14, 2015 State Board of Nursing (Board) Final Order to "undergo comprehensive mental health and substance abuse evaluation and monitoring to ascertain whether [he] is fit and competent to practice nursing in the State of New Jersey." He also appeals the denial of reconsideration and of a stay. We affirm.

I.

McCafferty is licensed by the Board as a registered professional nurse and an advanced practice nurse, and is a certified registered nurse anesthetist (CRNA).[1] He works at a surgical center in New Jersey. In 2012, the Board's Enforcement Bureau commenced an investigation after receiving information about possible drug or alcohol abuse by McCafferty. A doctor who previously worked with him certified that "[o]n multiple occasions," she smelled "alcohol on McCafferty's breath while at work and while he was taking care of patients." She claimed he was "often erratic in the medical care he provided" and would "make a number of mistakes." She was "suspicious" about the abuse of controlled substances because "the waste narcotics did not match up." She observed that he came into work with his face

---

[1] A CRNA is a registered nurse who is certified to administer anesthesia under certain circumstances. They also must be advanced practice nurses. See N.J.A.C. 13:37-7.1 to -7.2.

"busted" after "a physical altercation on his off time while intoxicated." She complained that his "behavior was often erratic and sloppy and he is a danger to patients." This doctor revealed that McCafferty "reeked" of alcohol on September 3, 2012, and smelled of alcohol on September 11, 2012.

An interview with a second doctor revealed that "she had known him to smell of alcohol" but did not observe him drinking on the job. This doctor observed him "bullying other employees," using "foul language" and "[making] inappropriate statements in the presence of patients." She also raised a concern about his narcotic wasting procedures. The Board's interview with a professional nurse revealed that she had "never experienced Mr. McCafferty smelling of alcohol." However, he "behaved in a loud and obnoxious manner." In addition, on "one occasion" he "asked her to sign a narcotic waste" that she did not witness and she refused. Although he would "frequently go out of his way to help people," he also "frequently spoke disrespectfully" about others. McCafferty was interviewed and "denied drinking to excess." He contended the allegations were false.

In 2013, the Board contacted McCafferty, advising it "reviewed information which reveals that [he] may have problems related to mental health and/or substance abuse that could have affected and/or might subsequently affect [his] nursing

3

activities." It offered to resolve the issue by private letter agreement which would include agreement by McCafferty to enroll in the Recovery and Monitoring Program of New Jersey (RAMP)[2] "for a minimum of [ninety] days." RAMP would require McCafferty to submit to "random observed urine screens" or hair screens, to prepare monthly self-evaluation reports, and to regularly attend peer support meetings. Additional requirements included a comprehensive mental health and substance abuse evaluation, which would be forwarded to the Board. He would be required to follow the recommendations of RAMP. All the evaluations were to be at his own cost. He would agree to stay enrolled in RAMP until successful completion or release.

When McCafferty did not enroll in RAMP, the program notified the Board that McCafferty "has been noncompliant" and that it could not "assure the [Board] or the public that Mr. McCafferty is safe to practice."

McCafferty was subpoenaed to appear before a committee of the Board to be questioned about "allegations that [he] appeared at [his] place of employment smelling of alcohol on occasion, that [his] practice of 'wasting' narcotics was defective, and that [he] spoke disrespectfully of [his] colleagues and made inappropriate

---

[2] RAMP is a private, voluntary program that contracts with the Board of Nursing.

statements in the presence of patients." McCafferty denied all the allegations and stated he was "flabbergasted" by them. He supplied the committee with recommendations and evaluations that attested to his performance. His counsel suggested that his use of breath mints might account for the smell of alcohol.

The Board again proposed a private letter agreement to McCafferty, allowing him to participate in RAMP. He did not sign the agreement. On April 6, 2015, the Board issued a provisional order of discipline. The order recounted the statements that had been made by the two doctors and a nurse. Under N.J.S.A. 45:1-22(f), McCafferty was ordered to submit to "evaluation and monitoring to evaluate whether continued practice may jeopardize the safety and welfare of the public." He was given thirty days to enroll in RAMP and to undergo its mental health and substance abuse evaluation procedures. The order would be finalized in thirty days unless he requested a modification or dismissal, setting forth his reasons. The Board would determine if additional proceedings were necessary, and if no "material discrepancies" were raised, the order would be finalized.

McCafferty requested dismissal of the provisional order. He challenged the credibility of one of the doctors who complained. He said the second complaining doctor had asked him to join her on a clinical healthcare network. He submitted ten other

certifications from doctors and nurses attesting to his competence and that they had not smelled alcohol. He noted all of the complaints about him were dated prior to January 2, 2013. A Deputy Attorney General for the Board responded that it was seeking an evaluation because three medical professionals reported questionable conduct, not that the Board had found McCafferty "engaged in any misconduct, or worked while impaired."

On December 14, 2015, the Board issued a Final Order, which required McCafferty to enroll in RAMP at his own expense. The order noted that, "[a]lthough ten medical professionals have indicated that they have not seen any evidence of alcohol or drug abuse or impairment, three have. In order to fulfill its mandate to protect the public, an evaluation is warranted." The Board stated that it did not cite to N.J.S.A. 45:1-21(l) and did not make findings that McCafferty was engaged in drug and alcohol abuse although a question had been raised about his possible drug or alcohol abuse. The Board's Final Order was posted to the National Practitioner Data Bank (NPDB),[3] and reported a "Complaint

---

[3] The NPDB is a permanent registry that maintains information about any negative performance by a medical professional. 42 U.S.C.A. §§ 11101-52; see also U.S. Dep't of Health & Human Serv., Health Res. and Serv. Admin., NPDB Guidebook (2015), available at www.npdb.hrsa.gov/guidebook (citing 42 U.S.C.A. §§ 11101-52 for its authority).

Received Alleging Impairment" by the Board, noting the licensee was required to "undergo comprehensive mental health and substance abuse evaluation within [thirty] days" of December 14, 2015.

McCafferty asked the Board to stay the Final Order and for reconsideration. Both of his requests were denied although the Board advised it would not enforce the Final Order during the pendency of his appeal. McCafferty appeals the Final Order and the denial of his stay and reconsideration.

On appeal, McCafferty contends his substantive due process rights were violated by the Board's entry of a Final Order of discipline under N.J.S.A. 45:1-22, without first listing a statutory ground under N.J.S.A. 45:1-21 for the violation or making findings in support of that statutory basis. He contends the Board's Final Order should have been dismissed because all the allegations were made more than a year before the Board's action, disqualifying them under N.J.S.A. 45:1-21(l) from any disciplinary action. He contends the Board had no authority to order his enrollment in RAMP, that the Board erred in entering its Final Order because it did not have substantial evidence to support its order, and it made no findings. He contends the Board erred by entering the Final Order without conducting further proceedings after a hearing was requested, that the Final Order was inherently inconsistent, that the Board erred by not staying the action or

reconsidering its Final Order, and the Board acted in a vindictive manner by making a report to the NPDB while the appeal was pending.

## II.

Our review of the Board's Final Order is limited. An agency decision should not be overturned unless there is "a showing that it was arbitrary, capricious or unreasonable, or that it lacked fair support in the evidence[.]" In re Carter, 191 N.J. 474, 482 (2007) (citation omitted). "Deference is appropriate because of the 'expertise and superior knowledge' of agencies in their specialized fields and because agencies are executive actors." In re Zahl, 186 N.J. 341, 352 (2002) (citation omitted). In reviewing agency decisions, we are to give "considerable weight to an agency's interpretation of a statute the agency is charged with enforcing." G.S. v. Dep't of Human Servs., 157 N.J. 161, 170 (1999). We are not, however, bound by "an agency interpretation of a strictly legal issue when that interpretation is inaccurate or contrary to legislative objectives." Ibid. (citation omitted) (citing N.J. Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 562-63 (1978)).

"The Board maintains oversight of professional licensing for nurses" pursuant to the Nurses Practice Act (the Act), N.J.S.A. 45:11-23 to -52. In re Eastwick Coll. LPN to RN Bridge Program, 225 N.J. 533, 537 (2016). To be licensed as a professional nurse

an applicant must not be "a habitual user of drugs." N.J.S.A. 45:11-26(a)(2). "To become licensed as a CRNA, an individual must meet both the general nurse licensing requirements, N.J.S.A. 45:11-26, as well as specified nurse anesthetist licensing requirements, N.J.A.C. 13:37-13.1." N.J. State Ass'n of Nurse Anesthetists, Inc. v. N.J. State Bd. of Med. Exam'rs, 372 N.J. Super. 554 (App. Div. 2004), aff'd o.b., 183 N.J. 605 (2005). McCafferty does not question that as a professional nurse and CRNA, he may not abuse drugs or alcohol.

The Act was amended in 2005 to allow the Board to "establish an Alternative to Discipline Program for board licensees who are suffering from a chemical dependency or other impairment." N.J.S.A. 45:11-24.10(a). Under the program, licensees can disclose their dependency to an intervention program designated by the Board, "which shall provide confidential oversight of the licensee during the period that the licensee seeks treatment for, and follows a plan for recovery from the dependency or impairment." Ibid. Members of the public may also report licensees "who may be suffering from chemical dependencies or other impairments." N.J.S.A. 45:11-24.10(c)(3)(a). Each referral is reviewed to determine "if participation in the program is appropriate." N.J.S.A. 45:11-24.10(c)(1)(d). This information is to be

transmitted to the Board. N.J.S.A. 45:11-24.10(h). The Board contracted with RAMP as an intervention program.[4]

McCafferty's contentions center on the Board's application of the Uniform Enforcement Act (UEA), N.J.S.A. 45:1-18 to -27, and not the Board's powers under the Act. The UEA is a remedial statute that is intended to provide uniformity in the investigative and enforcement powers of all professional boards "located within the Division of Consumer Affairs." Del Tufo v. J.N., 268 N.J. Super. 291, 297 (App. Div. 1993) (citing N.J.S.A. 45:1-14). It is to be afforded a liberal construction. N.J.S.A. 45:1-14; In re Kim, 403 N.J. Super. 378, 386 (App Div. 2008).

The Board's authority under the Act and the UEA are to be read in pari materia. See Kim, supra, 403 N.J. Super. at 384. "The UEA . . . does not abrogate the powers of the Board to license, regulate and investigate members of the medical profession." Del Tufo, supra, 268 N.J. Super. at 297. Among the Board's duties and powers, it "shall in its discretion investigate and prosecute all violations of provisions of the [A]ct." N.J.S.A. 45:11-24(d)(9). Under the UEA, a board also may "require any board licensee . . . to submit to an assessment of skills to determine whether the

---

[4] About RAMP, see NJSA.org, http://njsna.org/ramp/about-ramp/ .

board licensee . . . can continue to practice with reasonable skill and safety." N.J.S.A. 45:1-18(g).

The UEA provides in Section 21, N.J.S.A. 45:1-21, that a professional board may "refuse to issue or may suspend or revoke any . . . license" upon proof of any of the grounds enumerated in that section. These include "professional or occupational misconduct", N.J.S.A. 45:1-2(e); a licensee who is not capable "of discharging the functions of a licensee in a manner consistent with the public's health, safety and welfare," N.J.S.A. 45:1-21(i); and a licensee who "is presently engaged in drug or alcohol use that is likely to impair the ability to practice the profession . . . with reasonable skill and safety" where "presently" is defined as "at this time or any time within the previous 365 days," N.J.S.A. 45:1-21(l).

Under N.J.S.A. 45:1-22, Section 22 of the UEA, the Board may "[i]n addition or as an alternative . . . to revoking, suspending or refusing to renew any license, registration or certificate issued by it, . . . after affording an opportunity to be heard[,]" do other things such as "issue a letter of warning, reprimand or censure," order a person violating any provision of an act to "cease and desist," or to take affirmative corrective action. N.J.S.A. 45:1-22(a), (c). The Board may

> [o]rder any person, as a condition for continued, reinstated or renewed licensure, to submit to any medical or diagnostic <u>testing and monitoring</u> or psychological evaluation which may be required <u>to evaluate whether</u> continued practice may jeopardize the safety and welfare of the public[.]
>
> [<u>N.J.S.A.</u> 45:1-22(f) (emphasis added).]

McCafferty contends that the alternatives set forth in Section 22 of the UEA cannot be used unless the Board first identifies a ground for discipline under Section 21 and makes a finding of a violation under that section. He bases his argument on use of the word "penalties" in the headnote of Section 22. The headnote reads "Additional or alternative <u>penalties</u> to revocation, suspension or refusal to renew; temporary order suspending or limiting license; subpoena." (Emphasis added). However, "[t]he title of a statute, more properly called its 'headnote', is deemed not 'to be part of' it, <u>N.J.S.A.</u> 1:1-6." <u>State v. Malik</u>, 365 <u>N.J. Super.</u> 267, 279 (App. Div. 2003). The headnotes "are not included in the laws when enacted by the Legislature but are added by others in the course of the classification and incorporation into the annotated statutes." <u>State v. Brown</u>, 188 <u>N.J. Super.</u> 656, 660 (Law Div. 1983). As such, the headnote is not part of the legislature's enactment.

Nothing in the language of Section 22 restricts its application unless and until there is a violation under Section 21. The provisions of Section 22 may be in addition to or as an alternative to revoking, suspending or refusing to renew a license. That the statute authorizes something short of the institution of formal action against the licensee under Section 22 is made clear from its language. Subsection (a) of Section 22, N.J.S.A. 45:1-22(a), allows the Board to "issue a letter of warning, reprimand or censure with regard to any act, conduct or practice which in the judgment of the board upon consideration of all relevant facts and circumstances does not warrant the initiation of formal action." Under subsection (f), N.J.S.A. 45:1-22(f), the licensee can be ordered to submit to testing or an evaluation to evaluate if the licensee's continued practice "may jeopardize the safety and welfare of the public." All of that language is anticipatory, designed to authorize the Board to evaluate if other action is needed.

McCafferty's interpretation of Sections 21 and 22 would significantly limit the Board's express and implied[5] investigatory

---

[5] Administrative agencies have such implied incidental powers as may reasonably be adapted to that end. In re Commn'r of Banking & Ins. v. Parkwood Co., 98 N.J. Super. 263, 272 (App. Div. 1967); see also Sheeran v. Progressive Life Ins. Co., 182 N.J. Super. 237, 247-248 (App. Div. 1981). When the task of a regulatory agency

powers under the Act and UEA, where allegations are made that a licensee may have an alcohol or drug problem. Under his interpretation, the Board could only order a nurse to submit to an evaluation if it first had a plenary hearing to determine the validity of the allegations of abuse. That procedure is not required by the statutes nor by due process, and it would produce a limitation on the Board's ability to protect the public.

As we said in the context of the Medical Board,

> the Board is vested not only with the greater power to deny, revoke, or suspend a physician's medical license, N.J.S.A. 45:1-21, but also with the power to invoke the lesser sanctions of warnings, reprimands, or censure. N.J.S.A. 45:1-22(a). We conclude that to limit the exercise of the power to grant or deny licensure, separate from the imposition of a lesser and perhaps more appropriate action is irrational and may thwart the effectiveness of the Board's fundamental dual purpose-to permit qualified physicians licensure while protecting the State citizenry.
>
> [Kim, supra, 403 N.J. Super. at 387.]

Here, the Board has the discretion to investigate and prosecute violations of the Act. N.J.S.A. 45:11-24(d)(9). It has

---

"'is to protect the health and welfare of members of the public' by assuring that all licensed practitioners are qualified, competent and honest, the grant of implied powers is particularly important." In re Polk, 90 N.J. 550, 574 (1982) (quoting In re Suspension of Heller, 73 N.J. 292, 303-04 (1977)).

an alternative to discipline program that evaluates referrals on issues of chemical dependencies and reports to the Board, making recommendations on participation in RAMP. N.J.S.A. 45:11-24.10. It has the investigative power to require a licensee to submit to an assessment of skills. N.J.S.A. 45:1-18. The Board has the power to order an evaluation to determine whether continued practice may jeopardize the safety or welfare of the public. N.J.S.A. 45:1-22(f). Given these express powers, we reject as inconsistent with a facial reading of these statutes, McCafferty's contention that a violation under Section 21 must be found before the Board can utilize the powers set forth in Section 22. Rather, if there is some evidence that a licensee may have a chemical dependency, and after the opportunity to be heard, we agree with the Board that it has statutory authority under Section 22 to order a licensee to undergo an evaluation even if that evidence would not support a violation under Section 21.

McCafferty was not denied the due process of law. He was aware of the allegations against him, given the ability to appear with counsel before an investigative panel and made multiple submissions to the Board, which included an application for a stay and for reconsideration. We reject his substantive due process claim in light of the process he was afforded and the public interests at stake. See Mathews v. Eldridge, 424 U.S. 319, 334-

35, 96 <u>S. Ct.</u> 893, 902-03, 47 <u>L. Ed.</u> 2d 18, 33 (1976) (balancing private interests, the risk of erroneous deprivation and the state interest to determine if substantive due process required additional procedural safeguards).

McCafferty's remaining points require brief comment. Because the Board's action was not initiated under Section 21 of the UEA, the 365 day limitation in subsection (l), <u>N.J.S.A.</u> 45:1-21(1), has no applicability. Given the allegations by three professionals, there was evidence to support the Board's order that he undergo an evaluation for possible alcohol or drug abuse. The Board had clear statutory authority to establish an alternative to discipline program and to contract for the provision of those services. McCafferty contends that RAMP is "intrusive" because it requires monitoring, observed urine testing, hair follicle tests, and attendance at peer groups. He does not contend that the Board abused its discretion in contracting with RAMP, nor did he argue that it acted in an arbitrary, capricious or unreasonable manner by using RAMP for licensees with drug or alcohol problems. He was not entitled to a contested case hearing because this was not an action to revoke, suspend or non-renew his license. <u>See</u> <u>N.J.S.A.</u> 52:14B-11. We are satisfied the Board did not abuse its discretion by denying the stay of enforcement or reconsideration. There was no evidence that the Board's report to the NPDB was

16

vindictive. It had authority to make the report and did so accurately. We conclude that McCafferty's further arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2141-15T1